# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF KANSAS

| | |
|---|---|
| KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC., LOUD LIGHT, DISABILITY RIGHTS CENTER OF KANSAS, DOROTHY NARY, MARTHA HODGESMITH, ROBERT MIKESIC, AND BENJAMIN SIMONS,<br><br>*Plaintiffs*,<br><br>v.<br><br>SCOTT SCHWAB, in his official capacity as the Kansas Secretary of State; and JAMIE SHEW, in his official capacity as the Douglas County Clerk,<br><br>*Defendants*. | Case No. _____<br><br>Removed from: District Court of Douglas County, Kansas, Case No. DG-2025-CV-000206 |

## NOTICE OF REMOVAL

Defendant Scott Schwab, in his official capacity as the Kansas Secretary of State, by and through undersigned counsel, and with full reservation of defenses, hereby removes this action from the District Court of Douglas County, Kansas, to the United States District Court for the District of Kansas, in accordance with 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446. In support of removal, Defendant Schwab provides this required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

### I. NATURE OF REMOVED ACTION

1. On May 5, 2025, Plaintiffs Kansas Appleseed Center for Law and Justice Inc., Loud Light, and Disability Rights Center of Kansas, filed a civil Petition for declaratory and injunctive relief in the District Court of Douglas County, Kansas (Case No. DG-2025-CV-00206) against

Scott Schwab, in his official capacity as the Kansas Secretary of State, and Jamie Shew, in his official capacity as the Douglas County Clerk. *See* Exhibit 1.

2. On June 9, 2025, Plaintiffs Kansas Appleseed Center for Law and Justice Inc., Loud Light, Disability Rights Center of Kansas, Dorothy Nary, Martha Hodgesmith, Robert Mikesic, and Benjamin Simons, ("Plaintiffs") filed a First Amended Petition for declaratory and injunctive relief against Scott Schwab, in his official capacity as the Kansas Secretary of State; and Jamie Shew, in his official capacity as the Douglas County Clerk. *See* Exhibit 2.

3. Plaintiffs challenge Senate Bill 4 ("S.B. 4") – passed into law via a gubernatorial veto override by the Kansas legislature on March 25, 2025 – which amends K.S.A. 25-1132(b) to eliminate the three-day grace period for county election offices to accept advance mail ballots. The amended statute now provides: "The deadline for the receipt by mail of the advance voting ballots by the office of the county election officer shall be 7:00 p.m. on the date of the election." (Exhibit 2, ¶¶ 96-97.)

4. In their First Amended Petition, Plaintiffs allege violations of equal protection, procedural due process, and the right to vote under the Kansas Constitution. (Exhibit 2, ¶¶ 98-125.)

5. Although Plaintiffs assert Kansas state constitutional claims, the claims necessarily raise a substantial and disputed federal question that is a central and essential element of Plaintiffs' right to relief, as discussed in Section II below.

## II. FEDERAL QUESTION JURISDICTION EXISTS

6. Federal district courts have original jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331. Although Plaintiffs plead their causes of action under state law, federal jurisdiction nevertheless exists if these state law claims "necessarily raise a stated federal issue,

actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This is the test for "embedded federal question" jurisdiction set forth by the U.S. Supreme Court in *Grable* and reaffirmed in *Gunn v. Minton*, 568 U.S. 251 (2013). A federal question embedded in a state law claim will support removal if all four *Grable* elements are met.

> A. *Plaintiffs' State Law Claims Necessarily Raises a Federal Issue*

7. Plaintiffs' state law claims necessarily require resolution of a federal issue: whether allowing a post-Election Day grace period for receipt of mail-in ballots conflicts with the federal mandate that there be a single Election Day for all Presidential and congressional elections.

8. The Federal Constitution's Elections Clause, found in Art. I, § 4, cl. 1, provides that states shall prescribe the "Times, Places and Manner" of congressional elections, "but the Congress may at any time by Law make or alter such Regulations. . . ." Similarly, the Electors Clause, found in Art. II, § 1, cl. 4, empowers Congress to set the time for choosing presidential electors. These Clauses collectively entrust Congress with final say over the rules that govern federal elections. *Foster v. Love*, 522 U.S. 67, 69 (1997).

9. By three separate statutes, Congress has fixed the date of federal general elections as the Tuesday following the first Monday in November in applicable years: 2 U.S.C. § 7 ("The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress . . . ."); 2 U.S.C. § 1 (providing for U.S. Senators to be chosen at the regular November election coincident with the House elections); 3 U.S.C. § 1 ("The electors of President and Vice President shall be appointed, in each State, on election day, in accordance

with the laws of the State enacted prior to election day."). Election Day, meanwhile, is defined as *"*the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. § 21. These statutes, known as the federal Election Day statutes, create a uniform Election Day for Congress and the Presidency that is required throughout the country. *Foster*, 522 U.S. at 70.

10. Plaintiffs allege that S.B. 4's Election Day receipt deadline arbitrarily disenfranchises voters and serves no valid state interest. But S.B. 4 was necessary to comply with the federal law mandate of a uniform Election Day because ballots arriving to the county election office in the mail after Election Day cannot be accepted without extending the election beyond the day Congress has fixed. A threshold question in this case, therefore, is whether a grace period for the receipt of mailed ballots is even permissible, or is instead irreconcilable with the federal Election Day statutes that require holding federal elections on a single, national Election Day.

11. Before the state court could declare S.B. 4 unconstitutional under Kansas law, it would first have to resolve the issue of whether a grace period is even permissible under the federal Election Day statutes. Thus, determining the scope of Plaintiffs' rights to a grace period under the Kansas Constitution (to the extent any such rights exist) necessarily turns on substantial questions of federal law – specifically, the interpretation and scope of the federal Election Day statutes.

12. The relief that Plaintiffs seek in their state court Amended Petition underscores the federal question at issue. Indeed, Plaintiffs demand that the court order state officials to accept ballots received in the mail up to seven days after Election Day. Putting aside whether such relief would even be permissible under state law, such a directive would clearly be in direct tension with federal law. This case, then, does not present some mere hypothetical or ancillary federal issue. To the contrary, the federal issue is an essential legal question that must be answered as part of the

adjudication of Plaintiffs' claims. Accordingly, the scope and effect of the federal Election Day statutes are embedded in Plaintiffs' causes of action, satisfying the "necessarily raised" element of *Grable*.

### B. The Federal Issue is Actually Disputed

13. The federal issue identified above is not only inherent in the causes of action, but actually disputed by the parties.

14. The crux of this lawsuit is a disagreement over what federal election law requires or permits. Plaintiffs contend that accepting mail-in ballots for a period of time after Election Day, so long as the ballots were mailed/postmarked by Election Day, is not only lawful, but required by the Kansas Constitution. Defendants, by contrast, assert that the federal Election Day statutes, 2 U.S.C. §§ 1, 7; and 3 U.S.C. §§ 1, 21, mandate that all votes in federal elections must be cast and collected no later than the official Election Day. Defendants further aver that any post-Election Day-receipt grace period cannot be squared with federal law. This position was recently adopted by the Fifth Circuit in *Republican National Committee v. Wetzel*, 120 F.4th 200 (2024) (holding that Mississippi statute allowing a grace period for the receipt of mail-in ballots contravened the federal Election Day statutes).

15. The parties' conflicting interpretation of federal election law lies at the heart of this case. Indeed, the question of whether S.B. 4's Election Day deadline is compelled by federal law is determinative of the outcome of Plaintiffs' claims. Plaintiffs must dispute Defendants' interpretation because Plaintiffs cannot otherwise prevail on their state law claims. As a result, the federal issue is "actually disputed" as required by *Grable*.

### C. *The Federal Question is Substantial*

16. The embedded federal question here is important "to the federal system as a whole," not merely significant to the immediate parties. *See Gunn*, 568 U.S. at 260. The Supreme Court has instructed that the substantiality inquiry looks to the importance of the issue beyond the confines of this case, asking whether it raises a serious federal interest in uniformity or authoritative federal resolution. *Grable*, 545 U.S. at 312.

17. In *Grable* itself, the Supreme Court found a substantial federal interest in having a federal forum decide the meaning of a federal tax notice statute, given the national interest in the prompt and uniform collection of federal taxes. *Id.* at 315. Here, the federal interest is at least as compelling and likely greater.

18. The question of whether mail-in ballots may be received after Election Day and included in the official tally implicates Congress' constitutional power to set the "Times" of federal elections (U.S. Const. art. I, § 4, cl. 1; art. II, § 1, cl. 4) and Congress' Election Day statutes enacted under that authority. This is not a localized or fact-bound issue, but rather a pure issue of federal law with broad significance. It goes to the uniformity and integrity of national election procedures.

19. A standardized federal Election Day is critical to ensuring that all voters nationwide participate in federal contests under the same temporal framework, thereby safeguarding against disparities that could undermine the legitimacy or perceived fairness of electoral outcomes. Allowing mail ballots received after Election Day to be counted in the official tally not only contravenes Congress' clear statutory directive, but it risks fostering voter confusion, opportunities for manipulation, and public skepticism about the integrity of election results. While states are free to utilize their own procedures and timelines for commencing voting and allowing early voting,

the national character of federal elections demands a consistent, nationwide approach to the deadline under which ballots must be received in order to be counted. This is integral to maintaining public confidence in the coherence and credibility of the electoral system.

20. The Tenth Circuit has instructed that the significance of the federal issue "can be evaluated by assessing whether the federal issue would be controlling in numerous other cases." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1268 (10th Cir. 2022) (quoting *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). Whether a post-Election Day grace period is permitted or prohibited under federal law could have ramifications for election laws in dozens of states and for federal elections nationwide. The issue is unequivocally not confined to the parties in this case. It presents a question crucial to the federal system. In the language of *Grable*, the issue implicates "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." 545 U.S. at 313.

### D. *A Federal Forum May Entertain This Dispute Without Disturbing Any Federal-State Judicial Balance*

21. Exercising federal jurisdiction over this case will not disturb any congressionally approved balance of federal and state judicial responsibilities. The *Grable* doctrine is to be applied in a manner that respects the division of labor between state and federal courts, reserving federal jurisdiction for those cases that present significant federal issues. *Gunn*, 568 U.S. at 258. This case clearly falls within that narrow category.

22. Adjudicating the meaning and scope of the federal Election Day statutes in the context of Plaintiffs' claims is precisely the type of issue that belongs in a federal forum. The dispute is quintessentially federal in nature and its resolution will impact many states across the country. What is presented here is not some run-of-the-mine state law cause of action that just happens to have an incidental effect on federal law. The dispute goes to the heart of what latitude, if any, that

states have to circumvent the dictates of a federal law governing our federal elections, a matter where Congress' power to regulate is at its constitutional zenith and an issue that is central to the constitutional architecture of our representative government.

23. Moreover, finding jurisdiction here is fully consistent with the balance approved by Congress. Challenges to grace periods (i.e., the flip-side of Plaintiffs' lawsuit) have been filed in federal court on numerous occasions. In fact, the issue of exactly who has standing to pursue such cases is a matter currently pending in the Supreme Court. *See Bost v. Ill. State Bd. of Elections*, 2025 WL 1549779 (June 2, 2025) (granting Petitioner's petition for writ of certiorari).

24. There is certainly no indication that Congress, in enacting the Election Day statutes, intended to exclude from federal court a state law case that turns on the construction of those statutory provisions. To the contrary, Congress has a strong interest in federal judicial oversight of disputes that directly implicate its own election regulations.

25. Nor would recognizing jurisdiction open any floodgates or upset the usual balance between state and federal cases. Election cases involving state law challenges to state election rules that hinge on the federal Election Day statutes are unusual and inherently limited. This is not a situation where federal jurisdiction would encroach on a traditional realm of state law or generate a large volume of federal cases, such as professional malpractice cases or consumer protection claims. In short, this Court can entertain the present case "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

26. Plaintiffs' claims, though pleaded under the Kansas Constitution, unavoidably require the Court to interpret and apply federal election law. The key question – whether S.B. 4's elimination of the grace period for receiving mail-in ballots after Election Day is compelled by federal law – is necessarily raised by the Amended Petition, actually disputed by the parties, and

substantial to the federal system. Moreover, resolving this federal issue in a federal forum respects the appropriate balance of judicial responsibilities.

27. All four *Grable* elements having been met, federal question jurisdiction under 28 U.S.C. § 1331 is properly invoked, and removal is authorized by 28 U.S.C. § 1441.

### III. VENUE

28. Venue is proper in this Court because the U.S. District Court for the District of Kansas is the federal judicial district embracing the Douglas County, Kansas District Court (Seventh Judicial District) where Plaintiffs originally field this action. *See* 28 U.S.C. §§ 1441(a), 96.

### IV. COMPLIANCE WITH PROCEDURAL REQUIREMENTS

29. Defendant Schwab has satisfied all procedural requirements for removal under 28 U.S.C. § 1446 and District of Kansas Local Rules 3.1, 40.2, 81.1, and 81.2.

30. Plaintiffs properly served Defendant Schwab with process on June 12, 2025, under K.S.A. 60-304(d)(5).[1] Defendant Schwab has filed this Notice of Removal within thirty (30) days of that date. Removal, therefore, is timely under 28 U.S.C. § 1446(b)(1).

31. Acting pursuant to 28 U.S.C. § 1446(b)(2)(A), undersigned counsel has conferred with counsel for Defendant Jamie Shew, and Defendant Shew consents to the removal of this action. *See also* 28 U.S.C. § 1466(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.")

---

[1] Plaintiffs filed a Return of Service on May 16, 2025, suggesting that service had been made on Defendant Schwab. But that service did not comply with K.S.A. 60-304(d)(5). Plaintiffs then obtained an alias summons on June 4, 2025, and effectuated service properly on Schwab on June 12, 2025.

32. As required by 28 U.S.C. § 1446(d) and D. Kan. Rule 81.1(c), Defendant Schwab will promptly serve written notice of this filing on all adverse parties and file a copy of the notice with the District Court of Douglas County, Kansas. Defendant Schwab will then file a certificate with the Clerk of this Court showing proof of service of all notices and filings with the Clerk of the District Court of Douglas County, Kansas.

33. As required by D. Kan. Rule 81.2, Defendant Schwab will separately file the State Court Record with this Court within 21 days of this Notice of Removal.

34. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

## V. DESIGNATED PLACE OF TRIAL

35. Defendant Schwab designates Kansas City as the place of trial because the Douglas County District Court is in the Seventh Judicial District of Kansas. *See* D. Kan. Rules 40.2(c) and 81.1(b),

## VI. PRESERVATION OF RIGHTS AND DEFENDANTS

36. Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendants' right to assert any and all defenses or objections to the First Amended Petition, including lack of personal jurisdiction and the right to move for dismissal of the First Amended Petition. If there are any questions that arise as to the propriety of removal of this action, Defendant Schwab respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

37. Defendant Schwab reserves the right to amend or supplement this Notice of Removal.

### VII.  CONCLUSION

WHEREFORE, Defendant Schwab respectfully gives notice that the above-captioned civil action pending in the District Court of Douglas County, Kansas is removed to this Court, for further proceedings according to law.

          Respectfully submitted,

*/s/ Bradley J. Schlozman*
Bradley J. Schlozman (KS Bar #17621)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Tel.: (316) 267-2000
Fax: (316) 630-8466
E-mail: bschlozman@hinklaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a true and correct copy of the above and foregoing Notice of Removal was filed with the Clerk of the Court using the CM/ECF filing system. In addition, the undersigned sent a copy of this Notice of Removal via electronic mail to all parties of record in the state court case.

/s/ *Bradley J. Schlozman*
Bradley J. Schlozman (KS Bar #17621)