IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| KANSAS APPELSEED CENTER FOR LAW AND JUSTICE, INC., et al., *Plaintiffs*, v. SCOTT SCHWAB, et al., *Defendants*. | Case No. 2:25-cv-02375-JWB-GEB |

### DEFENDANT SCOTT SCHWAB'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

Defendant Scott Schwab, in his official capacity as the Kansas Secretary of State, hereby submits this response to "Plaintiffs' Motion to Remand Action to State Court." (Dkt. 26).

### Introduction

Plaintiffs attack Defendant Schwab's removal of this case to federal court on both procedural and substantive grounds. None of those arguments carry the day.

Plaintiffs first contend that Defendant Schwab's removal to federal court was untimely because it was filed more than 30 days after he was served with Plaintiffs' initial Petition. The problem with this argument is that the alleged service on June 6, 2025, upon which Plaintiffs predicate their theory, was defective because *it did not include a copy of the summons*. In fact, even the Amended Petition that Plaintiffs sent to the Attorney General's Office on June 12, 2025, omitted the summons. Tenth Circuit and Kansas law are clear that merely sending a copy of the Petition to a defendant without the accompanying summons is *not* sufficient to constitute service. It is perhaps no surprise, then, that Plaintiffs also never filed a proper proof of service in Douglas County District Court.

Plaintiffs further aver that Defendant Schwab's removal was defective because it did not include a written notice of consent to removal from co-Defendant Jamie Shew. There is no such requirement in 28 U.S.C. § 1446(b), as evidenced by the majority of federal circuits rejecting Plaintiffs' position. The handful of District of Kansas cases Plaintiffs cite include no textual support, little to no analysis, and are contradicted by other cases from this District. Moreover, not only did Defendant Schwab expressly file his Notice of Removal pursuant to Fed. R. Civ. P. 11, but he also obtained express written consent for removal from co-Defendant Shew's counsel (via e-mail) well within the thirty-date deadline. *See* Ex. 1 (E-mail from K. Karpin to B. Schlozman).

As for the jurisdictional issue, removal is appropriate not simply because federal law is implicated or provides a defense. To the contrary, the very nature of Plaintiffs' state law claims is incompatible with a critical federal law. Indeed, the non-existence of a grace period, and the State's powerful interests in such a law, is central to the analysis of Plaintiffs' claims. The federal judiciary is also the ideal forum for addressing these issues. In short, this case satisfies all four prongs of the Supreme Court's test for embedded federal questions justifying removal to federal court.

## Factual Background

1.      After filing this lawsuit in Douglas County District Court on May 5, 2025, Plaintiffs first attempted to serve Defendant Schwab on May 16, 2025, by sending a copy of the summons and Petition to the Secretary of State's Office. This method of service, however, did not comply with K.S.A. 60-304(d)(5), which requires that service on the State of Kansas, or any governmental agency thereof, must be effectuated by service on the Attorney General's Office.

2.      One week later, on May 23, 2025, Plaintiffs sent a copy of the Petition (without an accompanying summons) to the Attorney General pursuant to K.S.A. 75-764 for the purpose of giving him notice of a constitutional challenge. Once again, this notice did not constitute legally

sufficient service on Defendant Schwab. Service of process is governed by entirely different statutes. *See* K.S.A. 60-303, 60-304. And the constitutional notice statute has no application here in any event. *See* K.S.A. 75-764(g).

3. Plaintiffs then again attempted to serve Defendant Schwab by sending – via FedEx overnight delivery – a copy of their Petition to the Attorney General's Office. The package was delivered on June 6, 2025. Although Plaintiffs' counsel apparently obtained an alias summons two days earlier (according to the state court docket sheet), the package sent to the Attorney General *did not include a copy of the summons*. The package contained only the Petition itself. *See* Ex. 2, ¶ 12 (Affidavit of Connie Deckard).

4. Plaintiffs made a fourth attempt at service on Defendant Schwab by sending – via FedEx overnight delivery – a copy of their Amended Petition to the Attorney General's Office. The package was delivered on June 12, 2025. *But once again, it omitted a copy of the summons*. The package contained only the Amended Petition itself. *See* Ex. 2, ¶ 13.

5. In the meantime, although Defendant Schwab had still not been properly served, his attorney contacted counsel for co-Defendant Shew (who *had* been properly served at that point) and inquired whether his client would consent to a removal of the case to federal court based on an embedded federal question if and when Defendant Schwab was ultimately served. Counsel for Defendant Shew e-mailed his written consent on June 27, 2025. *See* Ex. 1.

6. Meanwhile, Plaintiffs *never* filed a valid return of service on Defendant Schwab in the Douglas County District Court, as is required by K.S.A. 60-303(c)(4) and 60-312(b).

7. Plaintiffs attached two documents to their Motion to Remand purportedly reflecting a "Return of Service of Alias Summons." *See* Dkt. 26, Exs. A and B. But two things are glaringly obvious. First, Plaintiffs never actually filed those documents in Douglas County District Court.

3

(Note the absence of any state court file stamps.) Second, the purported proofs of return are not even accurate. Indeed, Plaintiffs circle paragraph (3) – indicating service by an agent authorized to serve process – but that is not the methodology they employed (or attempted to employ). Instead, they sent copies of the Petition and Amended Petition to the Attorney General's Office via Federal Express, which would be paragraph (5) of the form.

8. Although Defendant Schwab has *still* never been properly served – a fact that the undersigned counsel discovered while gathering materials for this Response – counsel did enter an appearance on June 23, 2025.[1]

9. Defendant Schwab's Notice of Removal was filed on July 11, 2025. This removal was clearly timely as it was within thirty days of both (i) Plaintiffs' latest, albeit improper, attempt to serve Schwab on June 12 and (ii) the undersigned counsel's entry of appearance on June 23.

## Argument

A. *Plaintiffs' Failure to Serve the Attorney General with a Copy of the Summons Rendered Their Attempted Service Legally Deficient*

"[F]ederal courts in removed cases look to the law of the forum state, in this case Kansas, to determine whether service of process was perfected prior to removal." *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010). And Kansas law could not be clearer: absent a valid waiver, proper service must include a copy of *both* the Petition and the summons. *Cook v. Cook*, 83 P.3d 1243, 1246-47 (Kan. Ct. App. 2003). If the defendant has not been served with a copy of the summons, the defendant's obligations to appear and answer are not triggered. *Id.* Service without a summons is "not merely irregular or defective but [is] a nullity." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 716 (10th Cir. 2005).

---

[1] Based on a miscommunication with his client, the undersigned counsel mistakenly indicated on his entry of appearance that Plaintiffs had properly served Defendant Schwab on June 12, 2025. *See* Dkt. 5, Index 24. Given that the Notice of Removal occurred within thirty days of that entry, however, the misstatement is irrelevant.

4

This rigidity follows from the plain text of K.S.A. 60-303(c)(2). The statute clearly dictates that service by mail is effective only by "deliver[ing] a copy of the process and petition" in a sealed envelope. "[T]he fact that a party has actual knowledge of the pendency and the nature of an action against him or her is not a substitute for service." *State v. Skinner*, 987 P.2d 1096, 1099 (Kan. 1999). It is the same principle invoked by the U.S. Supreme Court for service under federal law. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

In sum, Plaintiffs' failure to serve a copy of the summons upon the Attorney General at any point in this case rendered each of their attempted services legally invalid. As a result, when Defendant Schwab filed his notice of removal on July 11, 2025, it was unquestionably timely.

    B.    *There is No Requirement in 28 U.S.C. § 1446(b) that Co-Defendants Must File Their Own Independent Consent to Another Defendant's Notice of Removal With the Court*

Under well-settled principles of statutory interpretation, this Court must likewise reject Plaintiffs' attempt to impose extra-statutory requirements to removal. The "unanimity rule" that they invoke originated from *Chicago, Rock Island, & Pacific Railway Co. v. Martin*, 178 U.S. 245 (1900), where the Supreme Court held that a predecessor removal statute required consent of all defendants. But the Court did not specify "*how* defendants must join in removal." *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009).

In 2011, Congress codified the current version of this procedural rule in 28 U.S.C. § 1446(b)(2)(A), which provides: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must *join in or consent* to the removal of the action." (emphasis added); Pub. L. No. 112-63, 125 Stat. 758. Under the plain language of the statute, a statement in one co-defendant's timely removal notice indicating consent on behalf of the other co-defendant(s) and signed under Rule 11 meets this statutory requirement.

Plaintiffs concede that Defendant Schwab's Notice of Removal explicitly referenced co-Defendant Shew's consent to removal. Dkt. 1, ¶ 31. In fact, it is undisputed here that co-Defendant Shew consented to removal *in writing* prior to Defendant Schwab's timely removal. *See* Ex. 1. Plaintiffs further acknowledge that nothing in the text of 28 U.S.C. § 1446(b)(2)(A) mandates a co-defendant to file affirmative, written consent on the record. Dkt. 26, at 8. Yet Plaintiffs insist removal was improper because some District of Kansas judges have added an *atextual directive* that that each non-removing co-defendant must file a separate indication of consent. *Id.* at 8-9.

Neither the Supreme Court nor the Tenth Circuit has ruled on the form of consent a non-removing defendant must provide. District courts within the Tenth Circuit are split on the issue. *McLaughlin v. Ford Motor Co.*, 603 F. Supp. 3d 1079, 1083 (N.D. Okla. 2022) (collecting cases). The same is true of this District. In *Smith v. McCormick-Armstrong Co.*, No. 12-4065, 2012 WL 4839918, (D. Kan. Oct. 11, 2012), for example, Judge Lungstrum held a Notice of Removal simply representing that all other defendants have consented to removal satisfies § 1446. *Id.* at *1 & n.1.

True, a handful of decisions from this District run the other way. But none are persuasive and none, of course, are binding on this Court. Judge Melgren recently noted that the term "join" in § 1446(b)(2)(A) has been construed by some judges as "support [] in writing." *Ashenfelter v. Escott Aerial Spraying, LLC*, No. 22-1144, 2023 WL 1100395, at *3 (D. Kan. Jan. 30, 2023). But

6

he explicitly recognized that "[t]here is no specific requirement set forth in the removal statute as to the form of consent needed by a non-removing defendant." *Id.* at *2. He even added that "there is no explicit requirement in the statute to file a separate, written consent[.]" *Id.* at *5. Instead, he noted, "it is a procedural construct created by the Court." *Id.* The other District of Kansas cited in Plaintiffs' Motion either rely on this judicial construct – wholly unsupported by the current text of § 1446(b) – or involved a notice of removal that did not reference the co-defendant's consent. *See Henderson v. Holmes*, 920 F. Supp. 1184, 1186-87 (D. Kan. 1996); *Wakefield v. Olcott*, 983 F. Supp. 1018, 1021 (D. Kan. 1997); *Patel v. Moore*, 968 F. Supp. 587, 590 (D. Kan. 1997).

When a statute has a plain meaning, the Supreme Court will not read words into the text. *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004). "To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926). The Supreme Court reinforced this point last month in rejecting the effort to demand that non-majority plaintiffs meet a higher evidentiary standard – divorced from the statutory text – in order to establish a right to relief under Title VII. *See Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1546 (2025). "If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654-55 (2020).

The Tenth Circuit has applied this construction canon in the context of motions to remand under 28 U.S.C. § 1447(c), holding that the statutory term "any defects" "applies *solely* to failure to comply with the *statutory* requirements for removal." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1095-96 (10th Cir. 2017) (emphasis added). In reaching that conclusion, the Tenth Circuit examined case law analyzing a prior version of the statute, which used the term "improvidently" rather than "defects," but recognized the basic point is the same:

7

> It would be unreasonable to assume that Congress would create a statutory right of removal, and in so doing go to the trouble of laying out specific and detailed requirements for exercising that right, and then—by means of the single word "improvidently"—extend carte blanche authority to the district courts to revise the congressional scheme by remanding cases on any grounds that seem justifiable to them. *Id.*

In light of this reasoning, it would be passing strange for the Tenth Circuit to embrace the kind of judicially-constructed removal requirements that Plaintiffs advocate here.

Turning to out-of-jurisdiction authority, the circuits are split on what is required to satisfy the unanimity requirement. The Fourth, Sixth, Eighth, and Ninth Circuits all hold that a statement in one defendant's timely removal notice that its co-defendant consents is sufficient. *See Mayo v. Bd. of Educ.*, 713 F.3d 735, 742 (4th Cir. 2013); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004), *abrogated on other grounds by Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025); *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187-88 (8th Cir. 2015); *Proctor*, 584 F.3d at 1225.

The reasoning of these courts is rooted in statutory text. The Ninth Circuit, for example, reasons that, because no federal rule or statute "specifically prescribe[s] a particular manner in which codefendants' joinder must be expressed," removal "can be effective without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient." *Proctor*, 584 F.3d at 1225. Likewise, the Fourth Circuit has held that "a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal." *Mayo*, 713 F.3d at 742. Rejecting the argument that removal was improper because a co-defendant did not sign the notice of removal or timely sign a paper giving its own notice of removal or consent, the Court, relying on § 1446 and Rule 11, held "a notice of removal signed and filed by

8

an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent." *Id.* The Eighth Circuit has similarly underscored that, particularly in light of the 2011 amendments to § 1446, there is no basis for adopting "hard-line," "hypertechnical" readings of the unanimity requirement:

> The 2011 amendments to § 1446 that codified the rule of unanimity did *not* describe the form of or time frame for consent when multiple defendants are involved. By comparison, § 1446 as amended lays out in detail the procedures for the notice of removal, including the form of the notice and the time frame for each defendant to file it in a multiple-defendant action. *Congress could have defined with equal specificity the form of or time for consent but chose not to do so.* Its failure to do so dissuades us from adopting a rule that places form over substance. *Griffioen*, 785 F.3d at 1187 (emphasis added).

Admittedly, the Second, Fifth, and Seventh Circuits seem to require each non-removing co-defendant to file a separate, written consent. But like the District of Kansas cases Plaintiffs cite, these cases contain little to no analysis of the text of § 1446. *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) (recognizing that pre-amendment version of § 1446 "'does not speak to joinder in another defendant's notice of removal,'" but nevertheless holding that the "remaining defendants must independently express their consent for removal") (citation omitted); *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994) (reasoning, without analyzing the statutory text, that "to join" a removal petition means to support it in writing), *abrogated on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *Getty Oil Corp., v. Ins. Co. of N. Am.*, 841 F.2d 1254 n.11 (5th Cir. 1988) (holding, without analyzing the statutory text, that § 1446 requires defendant consenting to removal to timely file written indication of consent).

The reasoning of the Fourth, Sixth, Eighth, and Ninth Circuits is far more compelling. As the Fourth Circuit pointed out, it is common practice to have one attorney represent to the court the position of other parties – including opposing parties – in the case. *Mayo*, 713 F.3d at 742. And as each of those courts have underscored, "[t]he potential for Rule 11 sanctions and a codefendant's

9

opportunity to alert the court to any falsities in the removing defendant's notice serve as safeguards to prevent removing defendants from making false representations of unanimous consent and forcing codefendants into a federal forum against their will." *Griffieon*, 785 F.3d at 1187; *accord Mayo*, 713 F.3d at 742; *Proctor*, 584 F.3d at 1225. In sum, removal was proper here.

    C.    *Plaintiffs' Amended Petition Presents an Embedded Federal Question Over Which Federal Jurisdiction is Proper*

Turning to the jurisdictional issue, Plaintiffs' attacks on Defendant Schwab's removal do not stand up to scrutiny. Defendant Schwab does not invoke the Court's jurisdiction simply because federal law is at issue or provides an affirmative defense. To the contrary, this case presents an embedded and critical federal question for which this Court is the best forum.

Federal courts have jurisdiction to hear cases "arising under" federal law. 28 U.S.C. § 1331. In *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the Supreme Court addressed the circumstances under which a federal court may exercise jurisdiction over a state law cause of action encompassing a "significant federal issue." Under this "embedded federal question" doctrine, federal jurisdiction lies over a state law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. This test is comprised of four elements: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).[2]

---

[2] Plaintiffs do not address the "actually disputed" or "disruption of the federal-state balance" prongs in their motion to remand. For good reason. The parties' disagreement as to what the federal Election Day statutes demand is a live controversy that is outcome determinative here. The resolution of Plaintiffs' state law claims and the relief they seek turn on the Court's construction of those statutes. The federal question, therefore, is the central point of dispute. And this is an issue that demands national uniformity. *See Grable*, 545 U.S. at 315 ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.").

### 1. Plaintiffs' Claims Necessarily Raise a Federal Issue

Plaintiffs' challenge to the State Legislature's repeal of a three-day grace period for receipt of mail ballots, and their demand that a seven-day grace period be imposed, necessarily raises a disputed and substantial federal question: whether federal law even permits such relief. A basic element of an equal protection claim under Kansas law (which is co-extensive with federal law, *see Rivera v. Schwab*, 512 P.3d 168, 180 (Kan. 2022)), is whether the State has a sufficiently valid interest in the challenged practice or policy. Similarly, with due process, a plaintiff must show that he has been deprived of a legally protected liberty or property interest without adequate process. Plaintiffs recognize as much. Dkt. 26, at 10. The Court cannot address these interests without first interpreting what the federal Election Day statutes require. Indeed, compliance with a controlling federal law (the federal Election Day statutes), which categorically prohibits the relief Plaintiffs seek, is unquestionably an essential, even dispositive, component in those evaluations.

Just as in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), which *Grable* characterized as the "classic example" of a state claim arising under federal law, 545 U.S. at 312, the state claims here arise under federal law "because the[ir] decision depends upon the determination" of "the constitutional validity of an Act of Congress which is directly drawn into question." *Smith*, 255 U.S. at 201. If the state law claim cannot be adjudicated without answering a federal question, that federal issue is necessarily raised by the well-pleaded complaint, even if Plaintiffs have deliberately ignored it. *Cf. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 384 (2016) (upholding federal removal where "the claim's very success depends on giving effect to a federal requirement"). Fidelity to federal election law is not merely a defense in this case; it is an inherent element of the constitutional inquiry.

*Gunn* is also instructive. The plaintiff there sued his attorney for malpractice in handling a patent dispute. Because the patent issues in the state malpractice claim implicated federal law, the defendant removed the case to federal court. *Gunn*, 568 U.S. at 255. Although the Supreme Court ultimately directed that the case be remanded to state court on the theory that the embedded federal question was not sufficiently "substantial" (the third *Grable* element), *id.* at 260-64, the Court held that the resolution of a federal question *was* a necessary component of the plaintiff's state law claim. *Id.* at 259. In other words, the first *Grable* element was clearly satisfied.

In their remand motion, Plaintiffs rely heavily on *Becker v. Ute Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944 (10th Cir. 2014), but they misconstrue the importance of that decision. The plaintiff there filed a federal suit against the Ute Indian Tribe alleging a series of state law claims arising out of his dispute with the tribe over his compensation under a contract. *Id.* at 946. He maintained that, although his claims all sounded exclusively in state law, he anticipated the Tribe raising certain defenses implicating federal law, such as sovereign immunity and attacks on the validity of the contract. *Id.* The Tenth Circuit held that none of those federal issues were "necessarily raised" in the complaint; they were merely (potential) affirmative defenses that could not the form the basis of *Grable* embedded jurisdiction. *Id.* at 948-49. Moreover, the Court added, Utah law afforded the plaintiff the right to relief on his state law claims, which made them most suitable for state court. *Id.* at 949.

There was nary a suggestion in *Becker* that federal law comprised an element of any of the plaintiff's state law causes of action. And Plaintiffs' emphasis of the Tenth Circuit's citation to *Gully v. First National Bank*, 299 U.S. 109 (1936), (Dkt. 26, at 12), is particularly inapposite. The mere fact that a defendant might enjoy sovereign immunity obviously does not make the state law claim federal in nature. That sort of defense clearly has no relationship to the elements of the

underlying state law claims. Yet, by contrast, federal law is a fundamental element of Plaintiffs' state claims in the case at bar. Federal law poses an insurmountable barrier to Plaintiffs' relief not just as a defense, but because it is core to the "interest" component of the causes of action.

The fact that Plaintiffs' requested relief squarely implicates federal law is also important. Plaintiffs ask the Court to order state officials to accept mail ballots postmarked by Election Day, but received up to seven days later. Whether this Court, or any Kansas state court, can lawfully grant such a remedy turns on a federal question: is a post-Election Day grace period even compatible with the federal statutes mandating a uniform federal Election Day? Federal law "plainly refer[s] to the combined actions of voters and officials meant to make the final selection of an officeholder," and it requires that all those actions occur by the time Congress has fixed. *Foster v. Love*, 522 U.S. 67, 71-73 (1997); *RNC v. Wetzel*, 120 F.4th 200 (5th Cir. 2024). (The issue is set out in greater detail in Defendant Schwab's pending motion to dismiss. Dkt. 32.) Plaintiffs' prayer for a seven-day extension of time for mail-in ballot receipt thus unavoidably raises the question of whether such an extension could be imposed in light of federal law. It flows from their *prima facie* case and prayer for relief. Defendant Schwab is not seeking to inject a federal question into an otherwise unrelated state-law dispute or merely asking the Court to apply federal law; he is pointing to a federal question that is necessarily raised by Plaintiffs' state court Petition.

**2. The Federal Issue Is Substantial and Important to the Federal System as a Whole**

Not only is interpretation of the federal Election Day statutes *necessary* to resolve Plaintiffs' claims and grant their requested relief, it is undeniably substantial and significant to maintaining a uniform election process. The substantiality inquiry evaluates "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Supreme Court in *Grable*

13

explained that a "substantial" issue is one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." 545 U.S. at 313.

An important attribute of substantiality in the context of a federal removal is whether the federal question presents a "nearly pure issue of law that would govern numerous cases and issues" or a "fact-bound and situation-specific" inquiry. *Gilmore v. Weatherford*, 694 F.3d 1160, 1174 (10th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). Here, the federal issue is entirely legal in nature and not dependent on any factual determination. (The same is true, incidentally, of the state law claims.) Plaintiffs seek to downplay the significance of the federal question, arguing that it is not substantial because their lawsuit also implicates various state law issues arising under the Kansas Constitution. Dkt. 26, at 13-14. That contention widely misses the mark. As in *Gilmore*, although Plaintiffs here "could lose their [state law claims] without the court reaching the federal question, it seems that they cannot win those claims unless the court answers that question." *Id.* at 1176. That underscores why their "right to relief necessarily depends on the resolution of a substantial question of federal law." *Id.* (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)). For purposes of this federal tribunal, the scope and meaning of the federal Election Day statutes is effectively the only legal issue contested. That is, a ruling in Defendants' favor on that issue ends the case. Full stop.

Moreover, the federal issue here is one of great national interest. This Court's ruling will be of major significance to roughly fifteen other states throughout the country that allow for the receipt of standard mail ballots after Election Day. In other words, the dispute is hardly confined to these Plaintiffs or even the State of Kansas. Plus, not only is the federal question the subject of a landmark decision by the Fifth Circuit and a pending certiorari petition before the U.S. Supreme

Court (Case No. 24-1260),[3] but the President recently issued an Executive Order directing the U.S. Attorney General to take all necessary steps to enforce the federal Election Day statutes. *See* Exec. Order No. 14,248, § 7, "*Preserving and Protecting the Integrity of American Elections*," 90 Fed. Reg 14005, 14009 (Mar. 25, 2025). Whether federal election statutes permit or prohibit states from accepting mail-in ballots received after Election Day goes to the uniformity and integrity of federal elections nationwide, a matter of paramount federal concern.

Nor does this Court's exercise of jurisdiction over the federal issue here pose any risk of opening the floodgates of federal jurisdiction or disturbing any congressionally-approved balance between federal and state courts. Congress has manifested a strong interest in a uniform Election Day, and providing a federal forum to decide the breadth of that rule is consistent with the federal judiciary's role in interpreting federal election law.

## Conclusion

Plaintiffs' state constitutional challenges are inextricably bound up with the critical federal question of whether Kansas' soon-to-be-former grace period – which Plaintiffs ask the Court to reinstate and even enlarge – contravenes Congress' uniform Election Day mandate. This federal question is necessarily raised by the claims, actually disputed by the parties, substantial to the federal system, and its resolution in a federal forum will not disrupt any proper balance of judicial responsibilities. This case firmly fits within the narrow, but vital doctrine recognized in *Grable* permitting federal courts to adjudicate state law claims hinging on federal law. Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331. Defendant Schwab asks that the Court deny Plaintiffs' motion to remand and allow the case to proceed in federal court.

---

[3] The Supreme Court also recently granted certiorari to address who has standing to challenge post-Election Day ballot counting. *See Bost v. Ill. Bd. of Elections* (Case No. 24-568), 2025 WL 1549779 (U.S. June 2, 2025).

Respectfully Submitted,


By: /s/ Bradley J. Schlozman
Bradley J. Schlozman (KS Bar #17621)
Krystle M. S. Dalke (KS Bar #23714)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206
Tel.: (316) 267-2000
Fax: (316) 660-6596
Email: bschlozman@hinklaw.com
Email: kdalke@hinklaw.com


Kris W. Kobach (KS Bar #17280)
Kansas Attorney General
120 S.W. 10th Street, Suite 200
Topeka, KS 66610
Tel: (785) 296-2218
Email: kris.kobach@ag.ks.gov

*Attorneys for Defendant Scott Schwab*

**CERTIFICATE OF SERVICE**

I certify that on July 29 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses on the electronic mail notice list.

By: */s/ Bradley J. Schlozman*